UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**ANTHOLOGY, INC.,**

   Plaintiff,

v.                                  No. 4:24-cv-00279-P

**TARRANT COUNTY COLLEGE DISTRICT,**

   Defendant.

### MEMORANDUM OPINION & ORDER

Before the Court is Defendant Tarrant County College District's (TCCD) Renewed and Updated Motion to Dismiss for Failure to State a Claim (Renewed Motion). ECF No. 32. Having considered the Renewed Motion, applicable law, and other relevant docket filings, the Court will **DENY** the Motion.

### BACKGROUND[1]

Plaintiff Anthology, Inc. is a notable provider of higher education software solutions, established through the merger of several prominent education technology companies. TCCD, a public community college system in Tarrant County, Texas, offers academic and technical education services to over 100,000 students annually through six campuses and various online programs. On June 1, 2022, Anthology and TCCD entered into a 10-year Master Agreement under which Anthology was to provide TCCD with Enterprise Resource Planning (ERP) products and services, encompassing the design, building, and implementation of the ERP project. The agreement projected revenue generation in the tens of millions for Anthology over its term, with TCCD agreeing to remunerate Anthology approximately $42 million for

---

[1]Because the underlying facts of this case remain unchanged, the Court restates the background found in its ruling on TCCD's first Motion to Dismiss. ECF No. 25.

the ERP project, plus an annual fee for certain services. In October 2023, TCCD exercised its contractual right under Section 8.2 of the Master Agreement to terminate the contract without cause. TCCD further asserted that it would not pay the early termination fee, contending that such a fee contravened Texas law and the intent of the parties as embodied in the Master Agreement. Attempts at informal dispute resolution were unsuccessful.

Consequently, on March 27, 2024, Anthology initiated this action, seeking a judicial determination regarding the early termination fee and damages for breach of contract. Anthology alleges that TCCD breached the Master Agreement by terminating the contract without cause and failing to pay the remaining compensation due under the contract, which amounts to approximately $22,923,192.64. Anthology contends that the termination fee is owed under the contract's terms and seeks damages for the full remaining amount of the contract. In response, TCCD moved to dismiss the lawsuit in May 2024, invoking sovereign immunity and other grounds. The Court granted TCCD's motion to dismiss based on a lack of jurisdiction and entered final judgment. On appeal, the United States Court of Appeals for the Fifth Circuit vacated the Court's judgment, holding that Texas state-law immunity does not limit a federal court's jurisdiction, and remanded the case for further proceedings. *Anthology, Inc. v. Tarrant Cnty. Coll. Dist.*, 136 F.4th 549, 551 (5th Cir. 2025).[2]

Before the Court is Defendant Tarrant County College District's Renewed Motion, filed in August 2025. ECF. No. 32. In its Renewed Motion, TCCD withdrew its remaining grounds for dismissal under Federal Rule of Civil Procedure 12(b)(1) and re-urged its merits-based

---

[2]The Fifth Circuit's opinion is somewhat puzzling since it did not address the merits of the Court's decision to grant TCCD's motion to dismiss. Rather, the Fifth Circuit admonished the Court for failing to recognize that "state-created immunities do not and cannot limit the jurisdiction of federal courts." *Anthology, Inc.*, 136 F.4th at 553. However, this was not the basis of the Court's holding and after almost twelve years as a judge on three different courts, the undersigned has never questioned whether "state-law immunity can[] limit the jurisdiction of federal courts," of course it cannot. *Id.* at 553. The undersigned sincerely apologizes to the Fifth Circuit and the parties if its decision caused confusion on appeal.

2

grounds for dismissal found under Rule 12(b)(6). ECF. No. 32 at 1. That Motion is now ripe for review.

## LEGAL STANDARD

Rule 12(b)(6) allows a defendant to move to dismiss an action if the plaintiff fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P 12(b)(6). In evaluating a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986)). "Further, 'all questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor.'" *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). However, courts are not bound to accept legal conclusions couched as factual allegations as true. *See In re Ondova Ltd.*, 914 F.3d 990, 993 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The well-pleaded facts must permit the court to infer more than the mere possibility of misconduct. *See Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the complaint must allege enough facts to move the claim across the line from conceivable to plausible. *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether the plausibility standard has been met is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 663–64).

## ANALYSIS

There are two questions the Court must resolve from TCCD's Renewed Motion. *First*, whether Chapter 2260 of the Texas Government Code applies, barring this litigation until administrative remedies are exhausted, or whether Chapter 271 of the Texas Local Government Code applies, allowing this case to proceed. *Second*, whether Anthology seeks only consequential damages, which are statutorily barred regardless of the outcome of question one.

**A. Texas Local Government Code Chapter 271 applies.**

TCCD argues that it is a "unit of state government" under Texas Government Code Chapter 2260. Thus, Anthology must exhaust administrative remedies before pursuing litigation in this Court. On the other hand, Anthology argues that TCCD is a "local government entity" under Texas Local Government Code Chapter 271. As a "local government entity, Anthology posits that this suit is properly before the Court without having to exhaust administrative remedies.

1. <u>Chapter 2260 of the Texas Government Code</u>

When a unit of state government contracts with a private party in Texas, sovereign immunity bars a breach-of-contract suit against the unit of state government unless the State expressly waives immunity and thus consents to the suit. *See In re City of Galveston*, 622 S.W.3d 851, 855–56 (Tex. 2021). In 1999, the Legislature enacted Chapter 2260 of the Texas Government Code. Chapter 2260 "provides a process for resolving certain contract claims against the State and units of state government without waiving immunity from suit or liability." *Tooke v. City of Mexia*, 197 S.W.3d 325, 342 (Tex. 2006).

Chapter 2260 does not waive sovereign immunity. Tex. Gov't Code § 2260.006. Rather, Chapter 2260 "provides an administrative process to attempt to resolve some contract disputes with state agencies before those disputes reach the Legislature." *In re City of Galveston*, 622 S.W.3d at 855. Through the administrative process, "[a] contractor may make a claim against a unit of state government for breach of a contract between the unit of state government and the contractor." Tex. Gov't Code § 2260.051.

Determining the applicability of Chapter 2260 turns on whether TCCD is considered a "unit of state government." The definition of "unit of state government" includes a university system or institution of higher education. *Id.* at § 2260.001(4). "The term does not include a county, municipality, court of a county or municipality, special purpose district, or other political subdivision of this state." *Id.*

"Institution of higher education" expressly includes public junior colleges. *Id.* at § 2260.001(3); Tex. Educ. Code § 61.003(8). "'Public junior

4

college' means any junior college associated with a junior college district" as described in Subtitle G, Chapter 130. *Id.* at § 61.003(2). The State of Texas published the list referenced in Section 61.063 via a publicly available webpage. Texas Higher Education Coordinating Board, List of Texas Public Community/Junior Colleges (2021) https://reportcenter.highered.texas.gov/correspondence/commissioner-correspondence/certification-appropriations-public-community-junior-colleges/. The list identifies TCCD as a public junior college who made the certifications under the Texas Education Code to become eligible to receive state appropriated funds. *Id.*

Therefore, following TCCD's logic, TCCD is a public junior college and, therefore, an institution of higher education. Because TCCD is an institution of higher education, it is a unit of state government. As a unit of state government, TCCD is brought under the purview of Chapter 2260. Thus, if TCCD is correct and Chapter 2260 applies, any claim against TCCD for breach of contract would need to follow the administrative procedure outlined in the statute.

2. <u>Chapter 271 of the Texas Local Government Code</u>

In 2005, the Texas Legislature abrogated governmental immunity enjoyed by local government entities when it enacted sections 271.151–160 of the Texas Local Government Code. *Tercero v. Texas Southmost Coll. Dist.*, 989 F.3d 291, 297 (5th Cir. 2021). Sections 271.151–160 "waiv[e] local governmental entities' immunity from suit for breach of contract under certain circumstances and limit[] damages." *Tooke v. City of Mexia*, 197 S.W.3d 325, 342 (Tex. 2006).[3]

Whether § 271.152 applies here turns on whether TCCD falls under the definition of "local government entity." As defined by the statute, "'local government entity' means a political subdivision of the state, other than a county or a unit of state government, as that term is defined by Section 2260.001, Government Code." *Id.* at § 271.151(3). The statute

---

[3] "A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." Tex. Loc. Gov't Code § 271.152.

continues, explicitly listing a "public school district and junior college district" as included in the definition. *Id.* Thus, the plain language of Chapter 271 explicitly states that junior college districts are local government entities.

Therefore, Anthology argues that TCCD is a junior college district and, in turn, a local government entity. As a local government entity, Chapter 271 applies, and no administrative process is required before pursuing litigation in this Court.

Given the statutory scheme, the Court faces two questions in determining which statute applies: *first,* whether a meaningful difference exists between a "junior college" and a "junior college district;" *second*, whether TCCD is a "junior college" or a "junior college district."

### 3. The statutory distinction between Junior College Districts and Junior Colleges

The statutory scheme draws a distinction between public junior colleges and junior college districts. On the one hand, "institution of higher education" encompasses *public junior colleges*. *Id.* at § 2260.001(3); Tex. Educ. Code § 61.003(8). On the other hand, "local government entity" includes *junior college districts*. Tex. Loc. Gov't Code § 271.151(3)(B). Even throughout Chapter 130 of the Texas Education Code, titled Junior College Districts, references are made to both junior colleges and junior college districts. By using the terms in different contexts rather than interchangeably, the legislature differentiated "colleges" from "college districts."

However, case law suggests this distinction is tenuous, at best. Application of Chapter 2260 in the manner argued by TCCD is seemingly novel.[4] But opinions from a variety of courts seemingly conflate "junior college" and "junior college district." Rather than draw any distinction, courts have stated that the college itself is a junior

---

[4]TCCD posits that this "novelty" is because the cases cited by Anthology applying Chapter 271 dealt with plaintiffs who were preemptively excluded from Chapter 2260's applicability. ECF No. 34 at 4–5. While there may be truth to that argument, it does not help answer the question at hand: which statute should apply when both are seemingly applicable.

college district. *Damuth v. Trinity Valley Cmty. Coll.*, 450 S.W.3d 903, 904 (Tex. 2014) (holding that Trinity Valley Community College ("TVCC") is a local governmental entity to which the Local Government Contract Claims Act applies); *Tercero v. Texas Southmost Coll. Dist.*, 989 F.3d 291, 296 (5th Cir. 2021) (holding that Texas Southmost College "is a junior college district created pursuant to the Texas Education Code" and thus is a "political subdivision" of the state); *Hander v. San Jacinto Junior Coll.*, 519 F.2d 273, 274 (5th Cir.) (agreeing that San Jacinto Junior College, a public union junior college, is a junior college district and such districts are independent political subdivisions of the state under Texas law); *Esparza v. Galveston Coll.*, No. 3:21-CV-176, 2021 WL 5830043, at *2 (S.D. Tex. Dec. 1, 2021) ("Galveston College is a public community college district created pursuant to the Texas Education Code. Texas junior college districts [such as Galveston College] are independent political subdivisions.") (citations and internal quotation marks omitted); *Osinski v. Laredo Coll.*, No. 5:20-CV-189, 2022 WL 1772263, at *2 & nn.1–2 (S.D. Tex. June 1, 2022) (stating that Laredo College is a public junior college and, thus, a political subdivision of the state).

TCCD however points to *Prairie View A&M Univ. v. Dickens* to demonstrate that Chapter 2260 applies here. 243 S.W.3d 732 (Tex. App. 2007). There, the Fourteenth Court of Appeals of Texas held that "[a] 'unit of state government' is excluded from the definition of 'a local governmental entity.'" *Id.* at 735. Because Prairie View A&M is an "institution of higher education," it is encompassed by the definition of a "unit of state government" and, thus, not a "local government entity." *Id.*

The *Prairie View* decision is predicated on the exclusionary clauses in the two statutes. The definition of "unit of state government" explicitly excludes "a county, municipality, court of a county or municipality, special purpose district, *or other political subdivision of this state*." Tex. Gov't Code § 2260.001(4) (emphasis added). And "'local government entity' means a political subdivision of the state, *other than a county or a unit of state government*, as that term is defined by Section 2260.001, Government Code." Tex. Loc. Gov't Code § 271.151(3)

7

(emphasis added). Because there was no question as to the classification of Prairie View being a "unit of state government," the operative exclusionary clause was Chapter 271's. Accordingly, TCCD advances that since TCCD is an "institution of higher education," it, like Prairie View, is a "unit of state government." Thus, TCCD posits, Chapter 271's exclusionary clause brings TCCD outside the purview of Chapter 271.

However, the analogy to *Prairie View A&M* oversimplifies the question at hand. Prairie View A&M is a comprehensive university folded into the A&M University system, which undoubtedly falls into the definition of "institution of higher education." *Id.* at 734–35; Tex. Educ. Code § 61.003(8). Here, however, TCCD does not fit as squarely into the definition of "unit of state government." Rather, the question remains as to whether TCCD is the *college* and thus a "unit of state government" or if it is the *college district* and therefore a "local government entity" which is a political subdivision of the state.

In fact, the parties themselves seem to be confused as to whether TCCD is a college or a college district. While TCCD is contending now that it *is* the college, its general counsel stated the opposite in its termination letter sent to Anthology. ECF No 34 at 4; ECF No. 2 at 15–16. The letter states that TCCD is "a political subdivision and local government entity of the state of Texas" and that "Texas Local Government Code Section 271.153" applies in these circumstances. ECF No. 2 at 15–16.

TCCD also contends that Anthology conceded to Chapter 2260's applicability based on the contract. A plain reading of the contract section shows that this is not so. Section 16.3 of the contract states "[t]o the extent that the dispute resolution process provided for in Chapter 2260 . . . are required by applicable law to apply to this Agreement" then the Parties will abide by Chapter 2260's requirements. ECF No. 2 at 31. This provision is far from a concession regarding the applicable law. Given the contract's conditional language, neither Party conceded to applying Chapter 2260; the Parties, instead, left it to be determined by "the applicable law." *Id.*

8

Regardless of Parties' confusion and whether a meaningful distinction can be gleaned between "colleges" and "college districts," the Fifth Circuit's Opinion in this case dictates which statute to apply. In its Opinion, the Fifth Circuit states, "Tarrant County College District ('TCCD') *is a junior college district* located in Tarrant County, Texas." ECF No. 30 at 2 (emphasis added); *see also Anthology, Inc.*, 136 F.4th at 551 (emphasis added). The language of the Opinion can only lead to one conclusion: TCCD is a junior college *district* and, therefore, a local government entity. As a local government entity, Local Government Code Chapter 271 applies.[5]

Because Local Government Code Chapter 271 applies, Anthology is not required to exhaust administrative remedies before pursuing its claim in this Court. On that ground, the Court **DENIES** the Motion.

### B. Anthology seeks direct damages, not consequential damages.

The remaining 12(b)(6) ground TCCD raises regards damages. Specifically, whether Anthology seeks only consequential damages, which are statutorily barred.[6] If Anthology solely seeks consequential damages, then Anthology fails to state a claim.

---

[5]Whether the Fifth Circuit intended to determine that TCCD is a "district" and therefore a local government entity pursuant to Local Government Code Chapter 271 is unknown, but this Court is bound by the Fifth Circuit's decision. *See Poindexter v. R.J. Reynolds Tobacco Co.*, N 3:99-cv-262-P, 2000 WL 358473, at *2 (N.D. Tex. Apr. 7, 2000) (Kendall, J.) ("Although this Court is not without sympathy towards the [party's] outrage, this Court is bound by the Fifth Circuit's legal interpretations."), aff'd, 237 F.3d 630 (5th Cir. 2000). This Court must take the Fifth Circuit's Opinion at its word and by its "plain meaning." *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979); s*ee also Cohens v. Virginia*, 19 U.S. 264, 399–400, 6 Wheat. 264, (1821) (Marshall, C.J.).

In this case, the Opinion's identification of TCCD as a "district" is outcome determinative. The undersigned is hopeful that the parties can receive clarification from the Fifth Circuit on this point in a future appeal.

[6]Regardless of whether Chapter 2260 or Chapter 271 applies, the analysis regarding damages remains the same because consequential damages are not permitted under either statute. However, since the Court finds that Chapter 271 applies to the above-captioned case, it will analyze the damages question under Chapter 271.

9

Along with the waiver of immunity for certain contract claims found in Chapter 271, "the legislature has also limited the types of damages a claimant may recover for breach of contract against a local governmental entity." *La Joya Indep. Sch. Dist. v. Ruth Villarreal Ins. Agency, LLC*, No. 13-21-00281-CV, 2023 WL 2182301, at *5 (Tex. App.—Corpus Christi–Edinburg Feb. 23, 2023, pet. dism'd). Damages sought under this Chapter must be permitted by § 271.153. *Id.*; Tex. Loc. Gov't Code § 271.153; *Zachry Const. Corp. v. Port of Houston Auth. of Harris Cnty.*, 449 S.W.3d 98, 110 (Tex. 2014) (holding that Chapter 271 "does not waive immunity from suit on a claim for damages not recoverable under Section 271.153").

Under Section 271.153, "[d]amages awarded in an adjudication brought against a local governmental entity arising under a contract subject to this subchapter may not include . . . consequential damages, except as expressly allowed under Subsection (a)(1)." Tex. Loc. Gov't Code § 271.153(b)(1). Subsection (a)(1) provides that a contractor may recover "*the balance due and owed* by the local governmental entity under the contract as it may have been amended." *Id.* at § 271.153(a)(1) (emphasis added).

The "balance due and owed" is "the amount of damages for breach of contract payable and unpaid.*" La Joya Indep. Sch. Dist.*, 2023 WL 2182301, at *5 (quoting *Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cty.*, 449 S.W.3d 98, 111 (Tex. 2014)). Consequential damages are "those damages which result naturally, but not necessarily, from the defendant's wrongful acts." *Id.* (quoting *Kan. City S. v. Port of Corpus Christi Auth. of Nueces Cnty.*, 305 S.W.3d 296, 307 (Tex. App.—Corpus Christi–Edinburg 2009, pet. denied)). "Lost profits, commissions, or other fees constitute consequential damages." *Id.* However, "if particular damages are specifically accounted for in the contract, they are direct, not consequential, in nature." *Id.* at *8 (quoting *McKinney & Moore, Inc. v. City of Longview*, No. 14-08-00628-CV, 2009 WL 4577348, at *5 (Tex. App.—Houston [14th Dist.] Dec. 8, 2009, pet. denied) (mem. op.)).

TCCD argues that the termination fee clause in the contact amounts to Anthology recovering lost profits. ECF No. 32 at 15. Since lost profits are considered consequential damages, the termination fee is

10

unrecoverable because it seeks damages not permitted under the statute. ECF No. 32 at 15–16. Anthology counters that the termination fee is simply the amount due and owed under the contract because it is specifically accounted for in the contract. ECF No. 33 at 19. Because the damages are accounted for in the contract, then they are direct damages, not consequential. ECF No. 33 at 20.

To support its argument, TCCD relies on *Tooke v. City of Mexia*, 197 S.W.3d 325. In *Tooke*, a contractor sued the City of Mexia for breach of contract. *Id.* at 329. The contract was for a three-year term. *Id.* at 329–30. The City cancelled the contract before the term was completed. *Id.* at 330. The City had paid all the prior invoices but refused to pay any more. *Id.* The contract was silent regarding a termination fee or liquidated damages. *See id.* The Tookes thus sued for breach of contract, claiming an "unspecified damages but requested jury findings only on lost profits and attorney fees." *Id.* The Supreme Court of Texas held that the Tookes failed to claim damages within Chapter 271's limitations because lost profits are consequential damages, which are excluded from recovery under the statute. *Id.* at 346.

However, an examination of the case at bar reveals how the *Tooke* analogy is inapposite. The termination fee clause states the following:

> If customer terminates this Agreement without cause by providing written notice to Anthology in accordance with Section 8.2(a)(iii), or if Anthology terminates this Agreement for a breach by Customer in accordance with Section 8.2(b)(i), at any time during the Term, then Anthology shall retain all payments made by Customer and Customer shall promptly pay to Anthology all amounts it is obligated to pay under Schedule A for the remainder of the Term.

ECF No. 2 at 27. Schedule A then enumerates the annual fees for every year in the contract's term. ECF No. 2 at 36. Thus, Anthology seeks to enforce explicit language of the contract, not some amorphous claim for lost profits like in *Tooke*.

Anthology, on the other hand, points the Court to *La Joya Indep. Sch. Dist. v. Ruth Villarreal Ins. Agency*. There, in a contract dispute between a contractor and school district, the school district argued that the

11

liquidated damages contract clause was "equivalent to the [contractor's] lost profits" and therefore constituted unrecoverable consequential damages. *La Joya Indep. Sch. Dist.*, 2023 WL 2182301, at *8. The Corpus-Christi-Edinburg Court of Appeal held that "[l]iquidated damages are a predetermined calculation of damages owed by a breaching party." *Id.* Therefore, liquidated damages constitute an "amount due and owed" under the contract, not consequential damages. *Id.* The court went further, noting that "the basis that the parties used to calculate and agree to liquidated damages does not change their nature." *Id.*

Here, the termination fee is most akin to a liquidated damages clause. Anthology seeks to recover damages specifically accounted for in the contract between the parties. ECF No. 2 at 27, 36. Even more, the basis for calculating the termination fee does not change the nature of the damages itself. *See La Joya Indep. Sch. Dist.*, 2023 WL 2182301, at *8. Thus, because the damages are specifically accounted for in the contract, they are direct damages, not consequential.

Anthology seeks to recover direct damages under the contract, not consequential. Therefore, the damages Anthology seeks are permitted under Chapter 271. On the ground of damages, the Court **DENIES** the Motion.

Having found that Anthology stated a claim upon which relief can be granted, the Court **DENIES** TCCD's Motion to Dismiss.

**SO ORDERED** on this **24th day of November 2025.**

_____
**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE